```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                        Richmond Division

TRANSCORE, LP,

     Plaintiff,

v.                                      Civil Action No. 3:19cv820

RICHMOND METROPOLITAN
TRANSPORTATION AUTHORITY,

     Defendant.
```

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANT RICHMOND METROPOLITAN TRANSPORTATION AUTHORITY'S RENEWED MOTION FOR SUMMARY JUDGMENT (ECF No. 76) ("RMTA Motion") and TRANSCORE, LP'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 78) ("TC Motion"), and the supporting, opposing, and reply memoranda and exhibits thereto. Counsel have presented oral argument on their respective motions. For the reasons set forth below, DEFENDANT RICHMOND METROPOLITAN TRANSPORTATION AUTHORITY'S RENEWED MOTION FOR SUMMARY JUDGMENT (ECF No. 76) and TRANSCORE, LP'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 78) will be denied.

### BACKGROUND

Transcore, LP ("TC") filed this action against the Richmond Metropolitan Transportation Authority ("RMTA") alleging a single

claim for breach of contract. That claim is predicated on five alleged breaches of a contract by which RMTA was to purchase, and TC was to provide, a toll system and related services (the "Project"). Amended Complaint (ECF No. 70, ¶¶ 34 through 38).

In paragraph 34, TC alleges that RMTA breached the contract by failing to pay two invoices submitted by TC so that it could be reimbursed for equipment that it had purchased for use in the Project (the "Equipment Claim"). The relief sought for the breach alleged in paragraph 34 is reimbursement of the actual cost of the equipment ($7,952,135.00).[1]

In paragraphs 35 through 38, TC alleges various other breaches of the contract. By way of relief for these breaches, TC seeks a declaration that it is entitled to terminate performance of the contract and to recover damages, including the profits it would have made had it continued the Project to completion. (Amended Complaint, ECF No. 70, ¶ 40). Those alleged damages are increased historical costs of the work performed ($1,200,000.00) and lost profits ($4,800,000.00). (Amended Complaint, ECF No. 70, ¶ 42a).

By way of alternative relief, for the contractual breaches alleged in paragraphs 35 through 38 of the Amended Complaint, TC seeks declarations that: (1) RMTA materially breached the

---

[1] With "retainage," that is said to be $8,462,508.00. There is, however, no explanation for the "retainage" amount.

2

contract and, in so doing, unreasonably delayed completion of the Project; and (2) TC be allowed to complete the Project on an amended schedule. TC also seeks damages for increased historical cost increases ($1,200,000.00) and unpaid invoices (the Equipment Claim damages and some retainage). (Amended Complaint, ECF No. 70, ¶ 42(b)). TC seeks an award of prejudgment interest as allowed by law. (Amended Complaint, ECF No. 70, ¶ 42(c)).

For its part, RMTA denied the breaches alleged by TC and filed a counterclaim alleging a one count claim for breach of contract based on several acts of breach, to wit: understaffing the Project; failing to meet Project milestones; suspending work on the Project; refusing to provide adequate assurance of performance; and failing to cure defaults. (AMENDED COUNTERCLAIM BY DEFENDANT RICHMOND METROPOLITAN TRANSPORTATION AUTHORITY (hereafter "Amended Counterclaim"), ECF No. 80, ¶¶ 66, 67, 68). By way of relief, RMTA posits two alternative scenarios depending on whether it elects to terminate or not to terminate the contract. (Amended Counterclaim, ECF No. 80, ¶ 71).

If it elects not to terminate the contract, RMTA seeks a declaration that TC cannot terminate the contract, and an award of liquidated damages; recovery of its costs as a result of TC's breach ($1.959 million). Should it elect to terminate the contract, RMTA seeks an award of liquidated damages; reimbursement

3

of amounts paid to TC ($1.3 million); a declaration that it owes TC nothing more; its expenses as a result of TC's breaches ($4.4 million); the cost of cover for replacing TC's work (unspecified); and RMTA's future expenses caused by TC's breaches (unspecified) (Amended Counterclaim, ECF No. 80, ¶¶ 71(a) and 71(b)).

## MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Each side has submitted motions for partial summary judgment.

In RMTA's Motion (ECF No. 76), RMTA seeks dismissal of TC's claims for lost profits "and other compensatory damages." Also, RMTA seeks an award of liquidated damages in the amount of $3,100.00 per day beginning on November 1, 2019, or alternatively, should the Court conclude that disputed facts exist as to the amount of applicable liquidated damages, a declaration striking TC's affirmative defense that the liquidated damages provision is unenforceable.

In its supporting brief,[2] RMTA seeks much broader relief than is suggested by the neutral phraseology in the motion. For instance, RMTA considers prejudgment interest to be "other compensatory damages," and seeks summary judgment foreclosing TC's prejudgment interest claim. In particular, RMTA argues that

---

[2] MEMORANDUM IN SUPPORT OF RICHMOND METROPOLITAN TRANSPORTATION AUTHORITY'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 77) ("Renewed Brief").

Section 7.13 of the contract precludes payment of interest. That section provides that:

> [i]n no event shall Contractor (TC) be entitled to charge RMTA late fees, collection fees, attorney's fees, interest or other fees incurred by Contractor (TC) as a result of non-payment by RMTA.

(Amended Complaint, Ex. 1, ECF No. 70-1, p. 15 at § 7.13). To underscore its effort to bar prejudgment interest, RMTA also relies on Va. Code § 2.2-4355(C) which provides that:

> <u>no interest</u> penalty shall be charged when payment is delayed <u>because of disagreement</u> between a state agency and a vendor regarding the <u>quantity</u>, <u>quality</u>, or <u>time of delivery</u> of goods or services <u>or</u> the <u>accuracy</u> of any <u>invoice</u> received for the goods or services.

Va. Code § 2.2-4355(C) (emphasis added). In RMTA's view, this portion of the statute bars interest on any claim which is under dispute which includes the Equipment Claim.

On a broader front, RMTA seeks to bar all of TC's asserted delay damages (a part of "other compensatory damages") because TC has failed to give notice of these claims as required by Section 16 of the contract and Va. Code § 2.2-4363 (the "PPA"). To understand RMTA's notice theory, it is appropriate to note that at the Initial Pretrial Conference in this case, the Court noted considerable confusion in TC's Complaint respecting what damages it sought. TC then was afforded an opportunity to file the Amended Complaint in which TC seeks damages related to the time period of

June 12, 2019 forward. RMTA refers to that period as "Delay Period 2." RMTA takes the view that TC has given no notice, as required by Section 16 of the contract and the PPA, of the claim for damages occasioned in Delay Period 2, and therefore the claim for damages during this period must fail.

The record reflects that there is a claim for delay in a letter sent to RMTA by TC on June 12, 2019 (the "Claim Letter"). That letter clearly covered the period from November 2018 through June 12, 2019 (referred to by RMTA as "Delay Period 1"). (ECF No. 70-3). The first page of the Claim Letter and the ensuing section on the second page entitled "1. Midpoint Design Review Delays" clearly concerns delays in Delay Period 2. TC "seeks relief pursuant to Section 16 of the [contract], or 488-days in total delay time as illustrated in Exhibit A." The Claim Letter seeks also an additional extension for each day in which the dispute as set out in this part of the Claim Letter and Exhibit A remains unresolved.

However, there are four other numbered paragraphs in the Claim Letter. TC contends that these provisions constitute notice of a claim for continuing delay damages and, therefore, that the notice satisfies both Section 16 of the contract and the PPA.

RMTA seeks summary judgment on its claim for liquidated damages. It is undisputed that TC agreed to complete Milestone

8, the so-called RSAT, by September 27, 2019, or be subject to liquidated damages in the amount of $3,100.00 per day. In an attempt to resolve their differences, TC and RMTA agreed to suspend the liquidated damages provision to November 1, 2019. It is undisputed that Milestone 8, RSAT, has not been completed. How and why that occurred is the subject of considerable dispute between TC and RMTA.

**A. RMTA's Motion**

    **1. The Claim For Liquidated Damages**

As discussed above, there is no dispute that TC has not completed Milestone 8, RSAT. However, why that occurred is the subject of considerable factual dispute and, the resolution of those disputes will determine whether liquidated damages may be awarded in favor of RMTA and against TC. In other words, those factual disputes are material. Therefore, RMTA's claim for liquidated damages cannot be resolved on summary judgment.

Obviously mindful of these extensive factual disputes, RMTA seeks alternative relief by asking that the Court strike TC's defense that it was not responsible for liquidated damages. The argument on that point is not well developed, and it would be inappropriate to grant summary judgment on that theory at this time. Accordingly, RMTA's motion for summary judgment on the liquidated damages issue will be denied.

2. **Lost Profits**

Citing Section 20 of the contract, entitled "Limitation of Liability," RMTA contends that the contract precludes recovery of lost profits. Section 20 provides:

> In no event shall either [TransCore] or RMTA be liable to the other <u>for any special, indirect, incidental or consequential damages (including</u>, but not limited to lost revenues, loss of transactions, <u>profits</u> and lost business opportunity), regardless of the legal theory under which such damages are sought, and even if the parties have been advised of the possibility of such damages . . . provided, however, that such limitation shall not be inclusive of any amount assessed against or paid by [TransCore] for liquidated damages or price adjustments under Section 17.

(Amended Complaint, Ex. 1 (ECF No. 70-1, p. 41 at Section 20)) (emphasis added).

Section 20 of the contract clearly describes lost profits as "special, indirect, incidental or consequential damages," and Section 20 prohibits recovery of such damages. Waivers of consequential damages clearly are enforceable under Virginia law. <u>Washington & Old Dominion Ry.</u>, 89 S.E. 131, 133 (Va. 1916). <u>See Envirotech Corp. v. Halco Engineering, Inc.</u>, 364 S.E.2d 215, 220 (Va. 1988). However, Va. Code § 2.2-4335(A) provides that:

> any provision contained in any public construction contract that purports to waive, release or extinguish the rights of a contractor to recover costs or damages for unreasonable delay in performing such contract . . . to the extent that the delay is caused

8

> by acts or omissions of the public body, its agents or employees, and due to causes within their control shall be void and unenforcable as against public policy.[3]

TC argues that Section 20 is not applicable because it governs lost profits in dealings with third parties. That construction simply is untenable because the contract imposes no such limit and provides no textual predicate for such an interpretation.

In its supplemental Rule 26 disclosures, TC describes its damage claims in the context of the alternative forms of relief that are sought in the Amended Complaint. In describing the damages to which it is entitled if it continues to perform the contract, TC makes no claim for lost profits. However, in describing its damages in the event that it elects to terminate the agreement, TC makes the claim for lost profits (ECF No. 77-20, § III, Supplemental Initial Disclosure made July 27, 2020, § 2.f.) That contention is further supported by expert reports that are incorporated by reference in the supplemental disclosures. TRANSCORE, LP'S SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1) (ECF No. 77-20). TC incorporated by reference its opinion of its experts (ECF No. 77-21).

---

[3] In Blake Constr. Co. v. Occoquan Sewage Auth., 587 S.E. 711, 718 (Va. 2003), the Supreme Court of Virginia has held that that Section 2.2-4335(A) is to be read broadly.

9

The papers in this case make clear that TC's claim for lost profits are the profits that it would have earned had it completed the job. Given the way that the claim for lost profits is presented, and the issues inherent in the election of such a remedy, whether the claim for lost profits is recoverable depends upon further factual development and thus partial summary judgment is inappropriate on that aspect of RMTA's Motion.

3.  **Prejudgment Interest**

As a general proposition, prejudgment interest can be awarded under Va. Code § 8.01-382, which is Virginia's general statute regulating an award of interest. The Supreme Court of Virginia has held that prejudgment interest is awarded at the discretion of the trier of fact, thus distinguishing such an award from post-judgment interest, which is mandatory. Dairyland Ins. Co. v. Douthat, 449 S.E.2d 799, 801 (Va. 1994). In discussing that distinction, the Supreme Court of Virginia explained that "prejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered" while post-judgment interest is "a statutory award for delay in the payment of money actually due." Id.

Prejudgment interest in this case, however, appears to be governed by Va. Code § 2.2-4355(A) which provides that "[i]nterest shall accrue, at the rate determined pursuant to Subsection B, on

10

all amounts owed by a state agency by a vendor that remain unpaid seven days following the payment date." And, under Va. Code § 2.2-4355(C), the exception to the rule posited by subsection A is that "when payment is delayed because of disagreement between a state agency and a vendor regarding the quantity, quality or time of delivery of goods or services or the accuracy of any invoice received for the goods or services." There is no definitive authority on this topic. However, an examination of the Amended Complaint and both motions for partial summary judgment and the exhibits thereto, makes it quite clear that TC's delay damage claims are predicated on: (1) the alleged refusal of RMTA to approve milestones because RMTA considers that TC has not completed the level of work (i.e., quality) or TC has not met the date required for completion of the milestone (i.e., time of delivery);[4] and (2) RMTA's alleged insistence that TC perform services beyond those required by the contract. Whether RMTA was right on its positions is dispositive of this question. And, that issue has to be resolved by the finder of fact. Thus, summary judgment on the prejudgment interest issue is not appropriate.

---

[4] The dispute over the payment of the Equipment Invoices clearly relates to quality, quantity, time of delivery and accuracy of invoices.

11

4.   **Notice Issue**

RMTA asserts that damages for the breaches alleged in paragraphs 35 through 38 of the Amended Complaint are barred because TC has not given the notice required by statute and by the contract. Generally, those paragraphs allege damages said to be attributable to various delays caused by RMTA.

It seems clear that there was a period of delay beginning in November 2018 and that the Claim Letter dated June 12, 2019 is titled "Claim for Extension of Time under Agreement Sections 16 and 4" (ECF No. 70-3). The delay period identified in the Claim Letter is Delay Period 1 which involved 488 days of delay. In the Claim Letter, TC sought "relief pursuant to Section 16 of the [contract] or 488-days in total delay time as illustrated in Exhibit A." The asserted additional price for the delay mentioned therein was $1,364,471.00. There seems to be no dispute that the Claim Letter provided adequate notice as to the Midpoint Design Review Delays. However, in the Amended Complaint TC does not claim damages for the period November 2018 to June 12, 2019 (Delay Period 1). Instead, the Amended Complaint seeks delay damages for Delay Period 2.

Apart from Delay Period 1, the Claim Letter mentions four other topics in paragraphs numbered 2 through 5. Each of them, on its face, seems to be a notice of a forthcoming change order.

None of them make a claim. However, in its concluding paragraph, the Claim Letter is quite confusing respecting whether its last two paragraphs proposing a resolution relate to item 1, or to items 2, 3, 4 and 5, or to items 1 through 5.

RMTA says the Claim Letter does not relate to items 2 through 5. TC says that it does and thus gives rise to a continuing claim.

It is settled that, under Virginia law:

> [a]ny notice submitted for purposes of satisfying the statutory requirement [the PPA] <u>must identify specifically each claim for damages</u> and <u>conspicuously declar[e]</u> that, at least in the contractor's view, <u>a serious legal threshold has been crossed</u>, and that the contract <u>intends to claim reimbursement for</u> the <u>particular damages</u>.

<u>Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.</u>, 745 F.3d 703, 722 (4th Cir. 2014) (internal quotations omitted) (emphasis added). In <u>Carnell</u>, the Fourth Circuit held that, "[a]lthough the notice need not exhibit 'the sophistication of a legal pleading,' the notice must 'clearly and timely state [] the contractor's intention to later file an administrative claim.'" <u>Id.</u>

A preliminary look suggests that RMTA is correct. However, the record is sufficiently ambiguous that it would be inappropriate to grant summary judgment on the notice issue and thereby bar all of TC's claims at this stage of the case. It may be, as RMTA's counsel has said, that the forthcoming summary judgment motions,

13

developed on a fuller record, will permit a summary adjudication of the notice issue. However, for today's case, it would be inappropriate to grant partial summary judgment on the notice aspect of the summary judgment motion filed by RMTA.

**B.   TC's Motion**

In its motion for partial summary Judgment (ECF No. 78), TC argues that it is entitled to summary judgment because RMTA "breached the parties' contract by refusing to pay within 30 days the 2019 equipment invoice that TransCore sent to it on June 4, 2019, and the 2020 equipment invoice that TransCore sent to it on July 15, 2020." (ECF No. 78, § 1). TC asserts that RMTA's refusal to pay was the first material breach of the contract and that, under applicable Virginia law, that material breach forecloses RMTA from demanding further performance by TC. Accordingly, TC seeks dismissal of RMTA's Amended Counterclaim.

There is no dispute that, on June 4, 2019, TC invoiced RMTA approximately $6.4 million for equipment to be installed in the Project. Nor is there a dispute that RMTA refused to pay for the equipment. In particular, RMTA refused to pay, because, <u>inter alia</u>, TC had not gotten RMTA's approval before ordering the equipment.[5] Also, RMTA grounded its refusal to pay on challenges

---

[5] The second invoice on July 15, 2020 was for approximately $1.5 million. RMTA refused to pay for that invoice for, <u>inter alia</u>, the same reason. It is hard to understand how this alleged breach

to the quality and quantity of the equipment and to timeliness of the invoice and the purchase, as well as to the accuracy of the invoices. Thus, RMTA considers that, for those reasons, it is not obligated to pay for the invoiced equipment.

It is undisputed that the contract in this case consists of several documents, among which is TC's Response to the Proposal issued by RMTA. RMTA points to a provision in TC's Response which says that TC "will request the permission of RMTA to conduct procurement of these long-lead items." Thus, it appears that, under the contract, TC is required to obtain permission of RMTA to conduct procurement of "long-lead items."

From oral argument, it appears likely that most of the subjects of the invoices at issue were "long-lead items," but there appears to be a factual dispute on that point as well. Thus, even though the contract documents, and evidence respecting the course of performance, favor the position of RMTA on this issue, a factual dispute exists as to whether the items that were the subject of the invoices were "long-lead items." Under these circumstances, it is not appropriate to grant summary judgment to TC.

TC also takes the position that the refusal of RMTA to pay the first invoice was the first material breach of the contract

---

could be the first material breach, coming, as it does, after TC filed this suit alleging another act as the first material breach.

which forecloses RMTA from any relief sought under its Amended Counterclaim. That argument is simply not well developed. Moreover, it appears that there are facts of record from which a jury could find that TC committed the first material breach which is the position asserted by RMTA. In sum, TC and RMTA each argue that the other committed the first material breach. Whether that is so involves genuine disputes of material fact. For these reasons, it is inappropriate to resolve that issue on summary judgment.

For the foregoing reasons, DEFENDANT RICHMOND METROPOLITAN TRANSPORTATION AUTHORITY'S RENEWED MOTION FOR SUMMARY JUDGMENT (ECF No. 76) and TRANSCORE, LP'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 78) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 2, 2020