**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| TRANSCORE, LP, | ) | |
|     Plaintiff/Counterclaim Defendant, | ) ) ) | |
| v. | ) ) | |
| RICHMOND METROPOLITAN TRANSPORTATION AUTHORITY, | ) ) ) | Case No.: 3:19-cv-820-REP |
|     Defendant/Counterclaim Plaintiff. | ) ) ) | |

**TRANSCORE, LP'S MEMORANDUM IN SUPPORT OF MOTION**
**IN LIMINE TO EXCLUDE TESTIMONY OF HAROLD WORRALL**

Thomas M. Wolf (VSB No. 18234)
Joseph M. Rainsbury (VSB No. 45782)
John "Jack" M. Robb, III (VSB No. 73365)
Kenneth T. Stout (VSB No. 88027)
MILES & STOCKBRIDGE P.C.
919 E. Main Street, Suite 1302
Richmond, VA 23219
804.905.6910 (Telephone)
804.905.6910 (Facsimile)
twolf@milesstockbridge.com
jrainsbury@milesstockbridge.com
jrobb@milesstockbridge.com
ktstout@milesstockbridge.com
    *Counsel for TransCore, LP*

# CONTENTS

**Table of Authorities** ................................................................................................................ iii

**Introduction** ............................................................................................................................. 1

**Argument** ................................................................................................................................. 2

    I.     Law Governing Expert-Witness Testimony. ............................................................ 2

    II.    The Court should bar Worrall from testifying about RMTA's claimed "direct damages." ................................................................................................... 3

    III.   The Court should bar Worrall from testifying about causation of delay. ............... 5

          A.     An expert proposing to testify about construction delays must show how the conduct in question affected the project's "critical path." .................................................................................................... 5

          B.     Worrall's testimony about project delays does not employ critical-path methodology. .......................................................................... 7

                1.     Worrall's testimony that TransCore has caused 18,632 days of delay is unreliable and inadmissible. ........................................... 7

                2.     Worrall's testimony that RMTA did not cause Project delays is unreliable and inadmissible. ............................................................. 9

    IV.   The Court should bar Worrall from testifying about understaffing and delays in early- to mid-2018 because Worrall cannot causally connect them to any delay in meeting the RSAT deadline. ................................................. 11

    V.    The Court should bar Worrall from opining on matters in his October 25, 2020 "Supplemental Report" that could have, and should have, been included in his July 15, 2020 initial report and his August 24, 2020 rebuttal report. ................................................................................................. 12

          A.     An expert may not testify about matters that were not timely disclosed unless the failure to disclose was "substantially justified" or "harmless." ............................................................................. 12

          B.     RMTA's delay in disclosing the new opinions stated in Worrall's October 25, 2020 Supplemental Report is neither "substantially justified" nor "harmless." ................................................................. 13

                1.     Worrall's Supplemental Report was untimely. ............................. 13

                2.     RMTA's untimely disclosure of new opinions in Worrall's Supplemental Report was neither "substantially justified" nor "harmless." ................................................................................. 14

**Conclusion** ............................................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ............................................................... 2

*Deluxe Bldg. Sys., Inc. v. Constructamax, Inc.*, No. 2:06-CV-02996 KM MAH, 2013 WL 5179077 (D.N.J. Sept. 13, 2013) .................................................................. 6

*E.E.O.C. v. Freeman*, 778 F.3d 463 (4th Cir. 2015) .................................................................... 2, 12

*G.M. Shupe, Inc. v. United States*, 5 Cl. Ct. 662, 728 (1984) ......................................................... 6

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ............................................................................ 3

*Haney v. U.S.*, 676 F.2d 584 (Ct. Cl. 1982) ....................................................................................... 6

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) .............................................................. 2

*Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496 (9th Cir. 2009) ................................................................................................................................. 12, 16

*Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221 (10th Cir. 1999) .............................................................................................................................. 6

*Oglesby v. Gen. Motors Corp.*, 190 F.3d 244 (4th Cir. 1999) .......................................................... 3

*Ranger Const. Co. v. Prince William Cty. Sch. Bd.*, 605 F.2d 1298 (4th Cir. 1979) ..................................................................................................................................... 4

*RLI Ins. Co. v. Indian River Sch. Dist.*, No. CIV. A. 05-858-JJF, 2007 WL 4292109 (D. Del. Dec. 4, 2007) ........................................................................................ 7

*Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385 (4th Cir. 2014) .................................... 12

*Southern States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592 (4th Cir.2003) ............................................................................................................... 13, 14

*Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137 (4th Cir. 1994) ..................................................................................................................................... 3

*Weaver Bailey Contractors, Inc. v. U.S.*, 19 Cl. Ct. 474 (1990) ...................................................... 6

*Weitz Co. v. MH Washington*, 631 F.3d 510 (8th Cir. 2011) .......................................................... 7

**Rules**

Fed. R. Civ. P. 26(a)(2)(D) .............................................................................................................. 12

Fed. R. Civ. P. 26(e) ........................................................................................................................ 16

Fed. R. Civ. P. 26(e)(1)(A) .............................................................................................................. 12

Fed. R. Civ. P. 37(c)(1) ............................................................................................................. 12, 14

Fed. R. Evid. 702 ............................................................................................................................... 2

**Treatises**

5 Bruner & O'Connor on Construction Law § 15:42 ........................................................................ 6

5 Bruner & O'Connor on Construction Law § 15:5 ................................................................................ 6
5 Bruner & O'Connor on Construction Law § 15:29 .............................................................................. 6

INTRODUCTION

This is a complex construction dispute involving an $18.1 million contract to upgrade the toll system of the Richmond Metropolitan Transportation Authority ("RMTA"). TransCore was the successful bidder on the construction project ("Project"). The case raises difficult issues about causation of delay. Under § 17.1 of the parties' Agreement, the commercial terms of which are attached hereto as **Exhibit 1**, the toll system was scheduled to be up and running by September 27, 2019, i.e., at the completion of the "Revenue Service Acceptance Test" ("RSAT") contract milestone. For each unexcused day of delay beyond this date, the Agreement imposes $3,100 in liquidated damages on TransCore.

The toll system has not, however, been completed. In its Amended Complaint, TransCore contends that RMTA has delayed the Project by dragging its feet on milestone approvals and by conditioning such approvals on TransCore's performance of extra-contractual requirements. [ECF No. 70, at ¶¶ 35-42.] RMTA, in turn, has filed an Amended Counterclaim, blaming TransCore for the delays and seeking liquidated and other damages.

RMTA has designated Harold Worrall, an engineer, to present expert testimony about issues concerning which party is responsible for Project delays. RMTA also has designated Worrall to testify about the reasonableness, or not, of TransCore's conduct throughout the Project. For reasons stated below, many of these opinions are inadmissible because: (1) they fail to use an accepted methodology, (2) they fail to account for confounding variables, (3) they lack an adequate foundation, or (4) they were not timely disclosed.

ARGUMENT

**I.      Law Governing Expert-Witness Testimony.**

Federal Rule of Evidence 702 requires that expert witnesses be "qualified" in the subject matter, that they base their opinions on "sufficient facts or data," and that they apply "reliable principles and methods" in reaching their conclusions:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The rule requires district courts to act as "gatekeepers" to ensure that an expert's testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The exact nature of the gatekeeping inquiry "depend[s] upon the particular expert testimony and facts of the case." *EEOC v. Freeman*, 778 F.3d 463, 466 (4th Cir. 2015) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)). District courts have "'broad latitude' to take into account any 'factors bearing on validity that the court finds to be useful.'" *Freeman*, 778 F.3d at 466 (4th Cir. 2015) (citation omitted).

The party proffering the expert testimony has the burden of establishing its admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 593 n.10. In evaluating the proposed testimony, the Court looks to the principles and methodology employed by the expert rather than the expert's

ultimate conclusions—though those often are inextricably intertwined. *Id.* at 595. "[C]onclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In evaluating the admissibility of expert testimony, a "court's evaluation is always a flexible one, and the court's conclusions necessarily amount to an exercise of broad discretion guided by the overarching criteria of relevance and reliability." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999).

An expert's testimony also must rest on an adequate factual foundation. *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994). Thus, for example, an expert's opinion as to damages must be causally related to the alleged harm. *Id.* A district court should exclude opinions that are "based on assumptions which are speculative and are not supported by the record." *Id.*

**II.     The Court should bar Worrall from testifying about RMTA's alleged "direct damages."**

In section IX of his July 15, 2020 expert witness report ("Worrall Report"), a copy of which is attached hereto as **Exhibit 2**, Worrall opines that RMTA is entitled to liquidated damages in the maximum amount allowed by contract: $1,131,500. (*Id.* at 28.) Worrall then opines that RMTA is entitled to certain additional "direct damages" caused by "TransCore's delay and refusal to continue work." He says that these direct damages refer to "increased Project costs, including operational and maintenance costs, as well as mitigation costs." (*Id.*)

The Court should bar Worrall from testifying about "direct damages" because the Agreement's liquidated-damages provision, § 17.1, provides the exclusive remedy for RMTA's injuries from delayed completion of the Project. We know this because the next provision in the Agreement, § 17.2, says so; it memorializes the parties' intent that liquidated damages would serve as a "reasonable estimate" of *all* damages that RMTA would suffer from Project delays:

> [B]oth parties agree and acknowledge the impracticability and extreme
> difficulty of fixing and ascertaining the true value of the damages which

3

> RMTA will sustain by failure to reach certain performance criteria such as *loss of revenue, RMTA's being found in breach of third-party contracts, service charges, interest charges, harm and inconvenience to the public, delays caused to other activities of RMTA by failure to perform this agreement, and other damages*, some of which are indefinite and not susceptible of easy proof, such amounts were actively negotiated between the Parties, and are in each instance agreed by both Parties to be *a reasonable estimate of the amount of damages* RMTA will sustain.

(**Ex. 1**, Agreement, § 17.2) (emphasis added). That the parties intended § 17.1 to serve as a proxy for all damages caused by delay is further confirmed by the formula for computing liquidated damages. Those damages are determined by (1) determining the number of days after September 27, 2019, that it takes TransCore to achieve the RSAT milestone, and then (2) multiplying that number by $3,100. (*Id.* § 17.1.) Thus, liquidated damages are directly proportional to the amount of delay—exactly what one would expect where, as here, the parties intended for liquidated damages to serve as a simplified method for computing delay damages.[1] Because § 17.1 serves as a substitute for all delay damages—direct or indirect—Worrall's proposed testimony about direct damages lacks foundation and is inadmissible.

Relatedly, the Court should bar Worrall from opining about the intended scope of the liquidated-damages clause. Worrall concedes the obvious—that the Agreement's liquidated damages provision was intended as an agreed-upon remedy for delay:

> Q. Is it your understanding that liquidated damages are to compensate the owner for delay?

---

[1] RMTA has no contractual basis for seeking delay damages beyond those specified in the Agreement. *Ranger Const. Co. v. Prince William Cty. Sch. Bd.*, 605 F.2d 1298, 1306 (4th Cir. 1979) (holding that a party could not recover delay damages beyond those specified in a contractual liquidated-damages provision); 5 Bruner & O'Connor on Construction Law § 15:82 (noting that "[a]s a substitute for actual damages, a 'liquidated damages' clause constitutes the owner's exclusive remedy for delay caused by events within the scope of the clause and bars the owner from recovering any actual damages attributable to the delay"). TransCore has developed this argument elsewhere and incorporates that here by reference. [*See* ECF No. 91, at pp. 6-10.]

A. Yes.

(Deposition of Harold Worrall at 248:11-15, relevant portions of which are attached hereto as **Exhibit 3**.) But he maintains that such damages were intended to estimate only *one* aspect of RMTA's delay damages, lost revenue. (**Ex. 2**, Worrall Rep. at 27.) The Court should bar Worrall from testifying about these matters. Worrall does not have direct knowledge of the parties' intent in drafting § 17.1. And even if he did, the parol evidence rule would bar him from testifying about it because his proposed testimony conflicts with the plain language of § 17.2, which reveals that lost revenue is only one of the myriad types of delay damages that the parties intended § 17.1 to encompass.

**III.    The Court should bar Worrall from testifying about causation of delay.**

The Court also should bar Worrall from testifying about causation of delay—whether by RMTA or by TransCore—because he has not followed any accepted methodology for determining whether, and to what extent, a contractor or owner has delayed a construction project.

A.   An expert proposing to testify about construction delays must show how the conduct in question affected the project's "critical path."

Not every failure to perform a construction task on time results in a delay to the overall project. Whether a delayed task causes overall delay depends on that task's relationships to other tasks in the project. As part of its obligations under the Agreement, TransCore must perform hundreds of discrete tasks—tasks that are identified in, or derived from, the Agreement's "Tolling Specifications" ("TS"). From a logistical perspective, some of these tasks must be performed in a certain sequence (e.g., laying conduit must precede placement of wires through it); some tasks can be done concurrently (e.g., designing a lane configuration can occur at the same time as designing software); and a few tasks can be done at just about any time before completion (e.g., preparing training manuals). Thus, a delay in performing a certain task may or may not delay completion of the overall project. Only those tasks

5

whose delayed completion affects the *project's* date of completion are "but for" causes of project delay.

"Critical path" is the term of art for the sequence linking of such tasks. *See Haney v. U.S.*, 676 F.2d 584, 595 (Ct. Cl. 1982); *Weaver Bailey Contractors, Inc. v. U.S.*, 19 Cl. Ct. 474, 480 (1990). In critical-path analysis, the objective "is to determine whether a claimed delay affected an activity that was on the critical path." *Deluxe Bldg. Sys., Inc. v. Constructamax, Inc.*, No. 2:06-CV-02996 KM MAH, 2013 WL 5179077, at *2 (D.N.J. Sept. 13, 2013) (citing 5 Bruner & O'Connor on Construction Law § 15:42). The critical-path methodology splits "the entire project into discrete and quantifiable steps; in turn, each step is allotted an estimated time for completion." 5 Bruner & O'Connor on Construction Law § 15:5. Applying the relationships and dependencies between the individual tasks, the methodology identifies the critical path, i.e., the chain of construction tasks any delay along which will delay the overall project. *G.M. Shupe, Inc. v. United States*, 5 Cl. Ct. 662, 728 (1984).

Critical path methodology ("CPM") is the industry standard for managing complex construction projects. 5 Bruner & O'Connor on Construction Law § 15:5. A party seeking relief for construction delays must show that those delays affected the critical path. *Id.* § 15:29 ("Events that cause no impact to critical path activities . . . cannot serve as a basis for the claim of delay, suspension, or acceleration.") *Id. See also Deluxe Bldg. Sys.*, 2013 WL 5179077, at *2 ("CPM is an accepted methodology for organizing a complex project" and "a tool to determine whether a claimed delay affected the completion date"). Thus, employing critical-path methodology is indispensable for parties alleging construction delays. *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1233 (10th Cir. 1999). "[T]he legal requirement that it is used to analyze is general and commonsensical: a [party alleging delay][2] must prove that a delay affected not just an isolated part of a

---

[2] In *Morrison Knudson*, the contractor alleged delay.

project, but its overall completion." *Id.* Courts assessing the reliability of expert testimony about construction delays scrutinize whether the expert has attempted to link the alleged breaches to delays in the overall project timeline. *Id. See also Weitz Co. v. MH Washington*, 631 F.3d 510, 528 (8th Cir. 2011); *RLI Ins. Co. v. Indian River Sch. Dist.*, No. CIV. A. 05-858-JJF, 2007 WL 4292109, at *5 (D. Del. Dec. 4, 2007).

> B. Worrall's testimony about project delays does not employ critical-path methodology.
>
>> 1. Worrall's testimony that TransCore has caused 18,632 days of delay is unreliable and inadmissible.

In the present case, RMTA proposes to have Worrall testify that TransCore's conduct has delayed the Project. (**Ex. 2**, Worrall Rep. at 19-25.) In evaluating those alleged delays, Worrall presents a series of tables prepared by RMTA's consultant, HNTB, that: (1) enumerate individual tasks ("deliverables"), (2) state the due date for the tasks under the baseline schedule, (3) state the completion date for the tasks, and then (4) compute the number of days late that TransCore completed the tasks (the "total delay"). (*Id.*) Worrall then adds the total-delay figures for each task to compute an overall amount of delay. (*Id.* at 25.) After tabulating the figures in HNTB's tables, Worrall concludes that "the documented delay, shown in the previous tables, amounts to 18,632 days total." (Worrall Rep. at 25.) He reiterates this in his deposition:

> Q. Relying on HNTB's analysis you concluded that there were 18,626 days of delay on the project?
>
> A. That's what their analysis showed.

(**Ex. 3**, Worrall Dep. at 218:10-13.) 18,632 days is approximately 51 years.

Worrall's methodology for computing the existence and extent of delays caused by TransCore is unreliable because it fails to show how delays in performing individual tasks resulted in overall

7

delays to the Project. Showing the impact of individual tasks on overall Project delay requires a time-impact or critical-path analysis. Yet Worrall never performed such a study:

> Q. So have you done a time impact analysis on the schedule for the TransCore project?
>
> A. There was one done by HNTB.
>
> Q. My question is have you?
>
> A. I have not, other than look to the milestone dates and the, you know, the schedule from that standpoint.
>
> Q. And you haven't done a critical path analysis of the delay in this case.
>
> A. I have not. I've reviewed it.
>
> Q. You were not asked to do a critical path analysis in this case; is that correct?
>
> A. Yes.

(**Ex. 3**, Worrall Dep. 192:17-193:7.)

Contrary to Worrall's assertions, the HNTB report he relied on was *not* a critical-path analysis. In its Rule 30(b)(6) deposition, HNTB's designated representative conceded that HNTB has never performed a critical path scheduling analysis for the Project:

> Q. . . . Has HNTB performed any critical path scheduling analysis for the project?
>
> A. Not—not that I'm aware of.

(Rule 30(b)(6) Deposition of HNTB at 211:21-212:1, relevant portions of which are attached hereto as **Exhibit 4**.) As noted above, all that Worrall and HNTB have done is identify tasks, subtract each task's scheduled date of performance from its actual date of performance, and then sum the results. (*See* **Ex. 2**, Worrall Rep. at 20-25.) Such an analysis ignores whether such delays were concurrent with other delays. It ignores delays caused by RTMA. And it does not show whether, or to what extent, the delays in performing a given task affected the Project's overall critical path. Worrall's

8

analysis instead assumes that none of the delays were concurrent, that all of the delays were TransCore's fault, and that all of the delays were on the Project's critical path.

This kind of delay analysis is unorthodox, unscientific, and unreliable. It will confuse, not assist, the jury in resolving issues relating to causation of delay. The absurdity of Worrall's conclusion confirms the unreliability of his analysis. As noted above, Worrall estimates that TransCore has delayed the Project by 18,632 days—approximately 51 years. TransCore commenced work on the Project in September 2017, a little more than three years ago. It is logically impossible for TransCore to have delayed the Project by 51 years. Given Worrall's failure to link the task delays to overall Project delay, his testimony will not enable the jury to determine what portion, if any, of the RSAT-completion delay can be attributed to TransCore. Because Worrall uses unreliable principles and methods to reach an impossible conclusion, the Court should not allow him: (1) to opine that TransCore's conduct caused delays to the Project overall, or (2) to attempt to quantify the delays that TransCore's conduct allegedly caused.

2. Worrall's testimony that RMTA did not cause Project delays is unreliable and inadmissible.

In addition to opining that TransCore caused 51 years of Project delay, Worrall also opines that RMTA did *not* cause Project delay. Specifically, Worrall asserts that no delay was caused by: (1) the RFP's erroneous statement that the Southbound ("SB") Powhite Shoulder Electronic Toll Collection ("ETC") lane was four feet, rather than eight feet, wide, (2) RMTA's request that TransCore redesign how to handle insufficient funds, (3) RMTA's delay in reviewing and approving the "MLT Simulator Slide Deck," to be used in training RMTA staff, and (4) RMTA's request that TransCore's system transmit keystroke information to the host subsystem. (**Ex. 2**, Worrall Rep. at 15, 17-19.) Here, too, Worrall's proposed testimony is inadmissible because it does not address the effect of the relevant conduct on the Project's overall timeline.

9

Take, for example, Worrall's opinion concerning the SB Powhite Shoulder ETC lane.  Worrall does not dispute that the RFP, drafted by RMTA, erroneously states that the lane is four feet wide.  Nor does he dispute that TransCore undertook time and effort to create a new design for the lane to address the error.  Instead, Worrall simply observes that RMTA opted not to accept TransCore's solution to the problem, preferring to use a physical barrier to prevent cars from driving on the shoulder to circumvent detection by the ETC system.  Yet RMTA's decision not to accept TransCore's solution does not erase the time and resources TransCore devoted to the issue—an issue caused by RMTA's error.  And Worrall fails to undertake any critical-path analysis of the effect of this extra work on the overall Project schedule.

Worrall's opinions regarding the redesign for handing insufficient funds and the need for keystroke information are much to the same effect.  Here, too, RMTA caused TransCore to undertake time and effort to develop a solution at RMTA's request.  Here, too, RMTA ultimately opted not to use TransCore's proposed solution.  But, as with the SB Powhite Shoulder ETC lane issue, this does not change the fact that TransCore undertook time and effort to develop the rejected solution.  Worrall does not address the effect of that extra work on the Project's critical path.

Worrall's opinions about RMTA's delays in reviewing and approving the MLT Simulator Slide Deck suffers from similar problems.  Worrall contends that RMTA's conduct did not delay the Project because it ultimately approved the Slide Deck.  Once again, this is a non sequitur.  That TransCore's submittal was ultimately approved does not mean that RMTA did not delay the Project by dragging its feet in reviewing and responding to TransCore's proposals.  And, once again, Worrall fails to address the effect of RMTA's delays on the Project's critical path.  Because Worrall's proposed opinions about RMTA's allegedly *not* causing delay suffer from the same deficiency—lack of any critical-path

10

analysis—as Worrall's proposed testimony about TransCore's alleged delays, the Court should bar Worrall from testifying about these matters.

IV. **The Court should bar Worrall from testifying about understaffing and delays in early- to mid-2018 because Worrall cannot causally connect them to any delay in meeting the RSAT deadline.**

In his expert report, Worrall expresses various opinions about TransCore's conduct during pre-MDR milestones:

> "Due to TransCore's delays, the Baseline Schedule submitted by TransCore was not able to be approved until February 2, 2018."
>
> "[T]he RMTA project" got off to a "very slow start."
>
> "Progress schedules were not delivered to RMTA as required in the RFP or as promised in TransCore's Proposal."
>
> "[P]rogress in the accomplishment of the second major Milestone, the Management Plan, continued to lag behind."
>
> "302 days of delay, all attributed to TransCore, have been documented prior to entering the MDR phase."

(**Ex. 2**, Worrall Rep. at 19-23.) This testimony lacks foundation because neither Worrall nor any other witness can show that these early delays led to TransCore's inability to meet the September 27, 2019 RSAT deadline. Whether TransCore met early Project deadlines is not, by itself, relevant to RMTA's delay claims against TransCore. It becomes relevant if, but only if, RMTA causally connects it to TransCore's inability to meet the contractual RSAT completion deadline. Worrell has not performed a critical-path analysis that would enable him to do so. Nor has RMTA identified any other expert who has performed such an analysis. Accordingly, Worrall's testimony on these matters lacks foundation and is inadmissible.

V.  **The Court should bar Worrall from opining on matters in his October 25, 2020 "Supplemental Report" that could have, and should have, been included in his July 15, 2020 initial report and his August 24, 2020 rebuttal report.**

    A.    An expert may not testify about matters that were not timely disclosed unless the failure to disclose was "substantially justified" or "harmless."

Rule 26(a)(2)(B)(i) requires that expert reports contain "a complete statement of all opinions the witness will express and the basis and reasons for them." A party must make required expert witness disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). *See Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 189 (4th Cir. 2017). A party may supplement its expert witness report "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). But a party is not allowed to "supplement" an expert disclosure by adding opinions that could have been included in the initial report. *EEOC v. Freeman*, 778 F.3d 463, 467 n.7 (4th Cir. 2015) (observing that a party may not use Rule 26(e) as a "loophole . . . [to]revise [its] disclosures" in light of the opposing party's challenges to its expert's conclusions and analysis) (quoting *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009)).

"Pursuant to Federal Rule of Civil Procedure 37, a party who fails to comply with the disclosure requirements of Rule 26(a) or the supplementation requirement of Rule 26(e) 'is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (citing Fed. R. Civ. P. 37(c)(1)). When evaluating whether a failure to disclose was "substantially justified" or "harmless," the Court is guided by the following factors:

> (1) the surprise to the party against whom the evidence would be offered;
> (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the

evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* (quoting *Southern States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 597 (4th Cir.2003)).

    B.    RMTA's delay in disclosing the new opinions stated in Worrall's October 25, 2020 Supplemental Report is neither "substantially justified" nor "harmless."

        1.    Worrall's Supplemental Report was untimely.

Pursuant to this Court's April 2, 2020 Order [ECF No. 27], the parties' deadline for serving expert reports was July 15, 2020, their deadline for serving any opposition expert disclosures was August 14, 2020, and their deadline for serving rebuttal reports was September 4, 2020. RMTA timely served Worrall's expert report on July 15, 2020 and Worrall's opposition expert report on August 24, 2020. (A copy of Worrall's Rebuttal Report is attached hereto as **Exhibit 5**.)

RMTA did not serve a rebuttal report for Worrall on September 4, 2020. But on Sunday, October 25, 2020, at 11:45 pm—just two days before Worrall's deposition—RMTA served TransCore with a "Supplemental Expert Consultant Report." (Worrall Supplemental Expert Report, attached hereto as **Exhibit 6**.) Worrall does not purport to correct or clarify the opinions stated in his earlier reports. Rather, he purports to use the new report as an opportunity to comment on the deposition testimony of other witnesses. In doing so, Worrall offers new opinions on a broad range of topics including, but not limited to, the following:

- That TransCore's recovery schedules have "anomalies" and were inconsistent with the terms of the parties' Agreement.

- That the Detailed Design Drawings submitted in November 2018, January 2019, and March 2019 "demonstrate little progress in terms of additional information and nothing about existing tolling elements" and that the March 2019 drawings "contained an inconsistency in design between the civil and electrical drawings."

13

- That "the definition of schedule delay should be measured as the planned versus actual date for accomplishing a milestone" and should not be based on TransCore's CPM schedules.

(**Ex. 6**, Worrall Supplemental Report at pp. 4-6). The new opinions were not timely disclosed in Worrall's initial report or rebuttal report. (*See* **Exs. 2 & 5**.) Accordingly, Worrall may testify about these matters at trial only if RMTA's untimely disclosure was "substantially justified" or "harmless."

2. RMTA's untimely disclosure of new opinions in Worrall's Supplemental Report was neither "substantially justified" nor "harmless."

RMTA's untimely disclosure of Worrall's new opinions was neither "substantially justified" nor "harmless." Four out of the five *Southern States* factors tilt strongly against RMTA. To begin with, RMTA's 11th-hour disclosure represented an unfair surprise. The "basic purpose of Rule 37(c)(1)" is to "prevent[] surprise and prejudice to the opposing party." *Southern States*, 318 F.3d at 596. As noted above, RMTA served Worrall's Supplemental Expert Report on Sunday October 25, 2020 at 11:45 pm—one business day before Worrall's deposition. It was, to understate the matter, a surprise. Worrall's new opinions changed the landscape of his proposed trial testimony. In preparing to question him on these issues during discovery, TransCore could not adequately cure the surprise in the single day before Worrall's deposition. Other depositions had been scheduled that Monday, limiting the time counsel could prepare for Worrall's deposition. In any event, a single day was not adequate for TransCore to research Worrall's new opinions, review them with its own experts, or request additional information from RMTA. And TransCore cannot cure the surprise now because discovery has closed.

The tardily disclosed opinions are central to the causation issues in this case. TransCore's position is that it could have met the September 27, 2020 RSAT deadline but for RMTA's dilatory conduct and extra-contractual demands. To support this argument, TransCore relies on—among other

14

things—the November 2018 recovery schedule. The Supplemental Disclosure was the first time Worrall criticized this schedule. Drilling down further, Worrall states for the first time that the November 2018 Detailed Design Drawings showed "little progress"—thereby calling into question the reasonableness of TransCore's Recovery Schedule. Finally, Worrall's statement about "the definition of schedule delay" is a belated attempt to patch up Worrall's inadequate opinions about TransCore's alleged causation of delay. In particular, it is an attempt to use milestone deadlines rather than critical-path analysis to identify the tasks whose belated completion led to overall project delay.

There is no excuse for RMTA's untimely disclosure of the opinions in Worrall's Supplemental Disclosure. Although Worrall attempts to justify the late disclosure by characterizing it as a response to information obtained in depositions that occurred after his earlier disclosures, all of the relevant information was available at the time of those earlier disclosures. Take, for example, Worrall's newly asserted opinions about the November 2018 recovery schedule. Worrall could have reviewed this recovery schedule before his initial expert disclosure, but did not. The only excuse he has for not doing so was that "I didn't have it." (Worrall Depo. at 309.) Indeed, it was only months after Worrall's initial report that RMTA asked Worrall even to review the recovery schedule. *Id.* at 309:19-310:10. Likewise, there is no excuse for RMTA's belated disclosure of Worrall's opinions about the adequacy of the November 2018, January 2019, and March 2019 Detailed Design Drawings. Worrall admits that RMTA could have had him review the documents before he prepared his initial report, but did not:

> Q. But those drawings existed when you did your original report, right?
>
> A. Yeah, I would assume they were. Yes.
>
> Q. You could have reviewed them at that time.
>
> A. Yeah, I did not, though.

15

(**Ex. 3**, Worrall Dep. at 315:21-316:4.) The same is true for each of the newly asserted opinions in the supplemental expert report. They are based on documents that Worrall either reviewed, or could have reviewed, when preparing his initial or rebuttal reports. There is no excuse for RMTA's failure to disclose Worrall's opinions on these matters within the deadlines prescribed by the Court. RMTA is improperly attempting to use Rule 26(e)'s supplementation process as "a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *Luke*, 323 F. App'x at 500.

## CONCLUSION

For all the foregoing reasons, TransCore, LP, respectfully requests that the Court grant its Motion and bar RMTA from eliciting testimony from Worrall on the matters identified above.

TRANSCORE, LP

By:    /s/ Thomas M. Wolf
            Counsel

Thomas M. Wolf (VSB No. 18234)
Joseph M. Rainsbury (VSB No. 45782)
John "Jack" M. Robb, III (VSB No. 73365)
Kenneth T. Stout (VSB No. 88027)
MILES & STOCKBRIDGE P.C.
919 E. Main Street, Suite 1302
Richmond, VA 23219
804.905.6910 (Telephone)
804.905.6910 (Facsimile)
twolf@milesstockbridge.com
jrainsbury@milesstockbridge.com
jrobb@milesstockbridge.com
ktstout@milesstockbridge.com

    *Counsel for TransCore, LP*