

Exhibit 3

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

Civil Action No. 3:19-CV-820-REP

TRANSCORE, LP

vs.

RICHMOND METROPOLITAN

TRANSPORTATION AUTHORITY

VIDEOTAPED DEPOSITION OF HAROLD WORRALL

Via Zoom Video

October 27th, 2020

MAGNA LEGAL SERVICES

Reported by: Keith Williamson, RPR, CRR, CSR



that RMTA had communicated to TransCore that no matter what TransCore submitted regarding future milestones, RMTA would absolutely not review them until RMTA had approved the MDR milestone, right?

A That's correct.

Q Okay.

A Sorry, Belinda. I have to give you a chance to object. I'm sorry.

MS. JONES: That's all right. I tend to elbow my way in. Don't worry.

THE WITNESS: I'll slow down.

MS. JONES: It's fine, Hal.

MR. WOLF: She's not shy, Hal. Don't worry.

BY MR. WOLF:

Q So have you done a time impact analysis on the schedule for the TransCore project?

A There was one that was done by HNTB.

Q My question is have you?

A I have not, other than to look at the milestone dates and the, you know, the schedule



from that standpoint.

Q And you haven't done a critical path analysis of the delay in this case?

A I have not. I've reviewed it.

Q You were not asked to do a critical path analysis in the case; is that correct?

A That's correct.

Q And if, I think you said this, but I just want to be clear, the revenue acceptance test milestone is milestone number nine on your list, right?

A Correct.

Q And if TransCore missed what you are saying on the first eight of those milestones but met the revenue acceptance test milestone deadline, there would be no liquidated damages, right?

MS. JONES: Object to the form.

A I suppose that's literally so, but highly unlikely. They couldn't pass the factory acceptance. If they couldn't pass 100 percent design review, installation ready,



Q If you could blow up the sentence that's right below the tables. Through you go. You say, "The documented delay shown in the previous tables amounts to 18,632 days total," right?

A That's correct. That's what that says.

Q And so you documented from your review of the drawings 18,632 days of delay?

A No, I relied upon HNTB's analysis.

Q Relying on HNTB's analysis you concluded that there were 18,632 days of delay on the project?

A That's what their analysis showed.

Q And that's what led you to conclude that it would be impossible for TransCore to make up the delay and complete RSAT on time?

A No. What led me to that conclusion was not so much this figure of 18,000 day delays from their analysis, but more the delay that had occurred in the first few milestones of the project. The second -- the IDR being expected in the spring and arriving ten months later.

come from?

A I think I read it somewhere in the documents.

Q Okay. Is there a way to quantify that lost revenue and whether it's more than what was lost from toll violaters before this project?

MS. JONES: Object to the form.

A In order to do that you'd need to know the violation rate, which I do not know.

Q So you have a section on liquidated damages on page 27 and 28. Is it your understanding that liquidated damages are to compensate the owner for delay?

A Yes.

Q At the bottom of page 27 you talk about recommissioned ACM lanes. Can you tell me what that means?

A Recommissioned?

Q ACM lanes.

A Bottom of 27.

Q 28. Excuse me.



agree, right?

MS. JONES: Object to the form.

A I suppose, yes.

Q So the adequacy of design drawings, we're looking at page 5 of 9 here. So what part of that paragraph could you not have offered as an opinion when you did your original report?

A Well, I reviewed the drawings myself and in my opinion, they don't meet the 80 percent goal for MDR because it's not just the elements that you're going to install in the lane, but it's also the elements that are in the lane. And not just the equipment that you're going to reuse, although that's important, but also things like pavement joints where you might have reinforcing bars that would affect the magnetic induction of the loops because if the loop doesn't work, you don't have any access you've got. It's a very important element.

Q But those drawings existed when you did your original report, right?



A Yeah, I would assume they were. Yes.
Q You could have reviewed them at that time?
A Yeah, I did not, though.
Q Okay. Removal of treadles. What part of that paragraph, which is on pages 5 and 6 of this supplemental report, could you not have written back when you did your original report in this case?
A I was not aware that it was specifically stated in the proposal and I found that later when I went through it this time that TransCore said that 12 treadles, we're going to take them out.
Q But you did have the proposal when you did the original report, right?
A I did.
Q So you would have offered this opinion back then, right?
A I could have, if I'd seen it.
Q The next one, VDOT CSV interface, on page 6 of 9. What part of this paragraph --

