# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

Civil Action No. 3:19-CV-820-REP


TRANSCORE, LP,

    Plaintiff,

vs.

RICHMOND METROPOLITAN

TRANSPORTATION AUTHORITY,

    Defendant.

_____/


REMOTE VIDEOTAPED DEPOSITION OF

HEATHER LOBER

Tuesday, October 20, 2020


Reported by:

Anne E. Vosburgh, CSR-6804, RPR, CRR

Job No. 653541



```
 1                    -oOo-

 2

 3        On October 20, 2020, commencing at

 4   approximately 9:30 a.m., the deposition of

 5   HEATHER LOBER, taken via remote videoconference

 6   from Roswell, Georgia, was held before and

 7   stenographically reported by Anne E. Vosburgh,

 8   Certified Shorthand Reporter No. 6804,

 9   Registered Professional Reporter,

10   Certified Realtime Reporter, and Notary Public.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1   REMOTE APPEARANCES:

 2

 3   ON BEHALF OF THE PLAINTIFF:

 4      MILES & STOCKBRIDGE

 5      919 East Main Street

 6      Suite 1100

 7      Richmond, VA 23219

 8      804.905.6916

 9      BY:   JOHN (JACK) M. ROBB, III, ESQ.

10            jrobb@milesstockbridge.com

11

12   ON BEHALF OF THE DEFENDANT:

13      CHRISTIAN & BARTON

14      909 E. Main Street

15      Suite 1200

16      Richmond, VA 23219-3095

17      804.697.4159

18      BY:   BELINDA D. JONES, ESQ.

19            bjones@cblaw.com

20      BY:   HENRY I. WILLETT, III, ESQ.

21            hwillett@cblaw.com

22

23

24

25
```



```
 1    ALSO PRESENT REMOTELY:

 2        Glen Rainwater, In-house Counsel for TransCore

 3        Theresa Simmons, RMTA

 4        Barry Mickle, TransCore

 5        Legal Videographer, Bob Behrens

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1          A.    I do not recall the exact time, no.
 2          Q.    So what is the -- in a gated
 3     contract, the milestones define the critical
 4     path; is that correct?
 5               MR. ROBB:  Object to the form.
 6               THE WITNESS:  That's not a correct
 7          statement, ma'am.
 8     BY MS. JONES:
 9          Q.    Okay.  What is incorrect about that
10     statement?
11               MR. ROBB:  Same objection.
12               THE WITNESS:  Critical path is a
13          defined project management scheduling
14          technique and process based on
15          calculations.
16     BY MS. JONES:
17          Q.    All right.  So explain the critical
18     path method that TransCore uses.
19               MR. ROBB:  Object to the form.
20               THE WITNESS:  Critical path method
21          is not a TransCore-defined process.  It
22          is a project management and
23          scheduling-defined process.
24     BY MS. JONES:
25          Q.    All right.  And what distinction
```



```
 1   BY MS. JONES:

 2        Q.    Ms. Lober, was the recovery

 3   schedule that's represented by Version 10,

 4   that's marked as Exhibit 10, this recovery

 5   plan depended on expedited submittals for

 6   midpoint design review and the 100 percent

 7   design review; is that right?

 8        A.    Where are you seeing that, please?

 9        Q.    I'm sorry.  Let's go back to 17.

10             And at the very beginning of

11   paragraph 2, it says:

12             "TransCore's plan to recover an

13          additional 56 days of delay by

14          expediting the submittals for the

15          midpoint design review, MDR milestone,

16          and the 100 percent design review

17          milestone and promptly completing

18          Factory Acceptance Testing was

19          reasonable and would have enabled

20          TransCore to complete RSAT by

21          September 27, 2019."

22             Do you see that?

23        A.    I do.

24        Q.    All right.  And so the recovery

25   schedule that is at Exhibit 10, one of the
```



 1    ways in which TransCore planned to recover the

 2    delay was by expediting the submittals for

 3    midpoint design review and 100 percent design

 4    review; is that right?

 5         A.    Not as of Update 10.

 6         Q.    Not as of Update 10.  It says

 7    "TransCore's" --

 8               Your point is that's how the

 9    additional 56 days were going to be recovered;

10    is that right, Ms. Lober?

11         A.    That is correct.

12         Q.    And that depended upon expediting

13    submittals for midpoint design review and the

14    100 percent design review; is that right?

15         A.    Yes.

16         Q.    And looking back at Exhibit 10, if

17    we can, did this recovery schedule, Ms. Lober,

18    also depend on a single submission for MDR

19    with a 21-day review time?

20         A.    For planned, uncompleted work.

21         Q.    What's that?  I'm sorry?

22         A.    For planned, uncompleted, future

23    work.

24         Q.    Okay.  And what do you mean by

25    that?



 1      A.    If actual multiple review cycles

 2   had occurred -- actually occurred prior to

 3   this or during the schedule update, they

 4   would -- multiple review cycles and review

 5   periods would be included for actually

 6   completed work.

 7      Q.    Okay.  And the date of this

 8   recovery schedule, the data date is 11/29/18;

 9   is that right?

10      A.    That is correct.

11      Q.    All right.  And were you aware of

12   the November submittals for MDR at the time

13   this schedule was drafted?

14      A.    This is a schedule narrative.  I

15   would need to look at the actual schedule to

16   see what actuals for that design review phase

17   were completed at the time of the schedule

18   preparation.

19          MS. JONES:  Okay.  Let's take a

20      look at Exhibit 33.

21          (Progress Schedule Update U10.0.S,

22          36 pages, marked as Exhibit 33.)

23          THE WITNESS:  Okay.

24   BY MS. JONES:

25      Q.    All right.  And my question was, I



1    had asked you whether or not this schedule

2    depended on the November submittals being --

3    well, let me backtrack a little bit.

4              I had asked you whether this

5    schedule depended on a single submission.  And

6    I think you had responded -- if you don't

7    mind, I might ask you again just so we can get

8    back on track.

9              Does this schedule depend on a

10   single submission for MDR?

11        A.    I would need to review it in

12   detail.

13        Q.    Okay.  What do you need to review

14   in order to be able to answer that question?

15        A.    And you're saying IDR or MDR?

16        Q.    MDR.  This schedule is --

17        A.    MDR, I would have to look at every

18   submittal on all of the -- I don't see how

19   many pages are on here -- the full schedule

20   for the MDR submission and look at the dates.

21        Q.    All right.  You need to look at

22   that to be able to tell me whether the

23   recovery schedule depended on a 21-day review

24   time for MDR?

25        A.    You asked if it was multiple.



1        Q.    Okay.  Let me ask it this way.

2    Does this schedule depend on a 21-day review

3    time for MDR?

4             MR. ROBB:  Object to form.

5             THE WITNESS:  I would need to

6        really review it.  I would have to pull

7        out every RMTA review here and look at

8        that.  From what I'm looking at

9        initially, I see 21 days for RMTA

10       reviews.

11   BY MS. JONES:

12       Q.    Okay.  And you'll recall, when we

13   looked at Exhibit 17, you said that the plan

14   for recovery was to expedite the submittals

15   for MDR design review.

16             Do you remember having read that?

17       A.    I do.

18       Q.    And so do you think that the

19   recovery schedule somehow allocated more than

20   21 days review time?

21       A.    No.  You are making two different

22   statements:  Review times versus submittal

23   times.

24       Q.    Okay.  What is the difference in --

25       A.    TransCore is responsible for



 1   considered, correct?

 2           MR. ROBB:  Object to the form.

 3           THE WITNESS:  I don't understand.

 4       Can you rephrase your question, please.

 5   BY MS. JONES:

 6       Q.   Yes, ma'am.

 7           I think the content of the

 8   submissions, what they say and whether or not

 9   they comply with the contract, that was not

10   considered in the date of completion of MDR

11   milestone in the schedule?

12           MR. ROBB:  Object to the form.

13           THE WITNESS:  The deliverables are

14       considered as part of the milestone

15       completion.

16   BY MS. JONES:

17       Q.   Yes, ma'am.  And my question is the

18   content of those deliverables, what they say

19   and whether or not what they say complies with

20   the contract is not considered?

21           MR. ROBB:  Object to the form.

22           THE WITNESS:  Yes.

23   BY MS. JONES:

24       Q.   And so as of the Progress Update

25   Schedule 10, it is your opinion that the


MAGNA
LEGAL SERVICES

1    critical path was the completion of MDR,

2    correct?

3        A.    Correct.

4        Q.    And when you say "RMTA's failure to

5    promptly review and approve the MDR drawing

6    package caused unreasonable delay in the

7    critical path of the project" -- do you see

8    that?

9        A.    Yes, I do.

10       Q.    When you say that, again, that

11   statement has no bearing on what the content

12   of the drawings package contained?

13           MR. ROBB:  Object to the form.

14           THE WITNESS:  Correct.  That is

15       based on the 21-day review time from

16       submission.

17   BY MS. JONES:

18       Q.    And when you say in this paragraph

19   that:

20           "The delay commenced on

21        November 16, 2018, after RMTA

22        communicated to TransCore that the MDR

23        drawings package and, therefore, the MDR

24        milestone, would not be approved until

25        the MDR drawing package was resubmitted


MAGNA
LEGAL SERVICES

1    regarding the existing toll system," you do

2    not intend to opine, do you, Ms. Lober, as to

3    whether or not it's appropriate to include the

4    existing toll system in the design drawings?

5         A.    I do not make that assumption, no,

6    or interpretation.

7         Q.    And so further down in this -- and

8    I'm looking at the sentence that begins with

9    "Although."

10              "Although as of November 16th,

11        2018, TransCore had not made all of the

12        MDR submittals."

13              You understand, do you not,

14    Ms. Lober, that there's more than just the

15    drawing package that has to occur in order for

16    MDR to be approved?

17        A.    Yes, I do.

18        Q.    And you go on to say that "The MDR

19    drawings package became the critical path of

20    the project."

21              Do you see that?

22        A.    Yes, I do.

23        Q.    Is there a difference between the

24    MDR drawings package being on the critical

25    path versus the MDR milestone being on the



1    critical path?

2         A.    Yes, there is.

3         Q.    Okay.  So in this paragraph, we

4    first say -- your very first sentence is that

5    "The critical path of the project as of

6    November 29th, 2019, was the completion of the

7    MDR."

8              And then down here we say that "The

9    MDR drawings package was the critical path of

10   the project."

11             Which is it?

12             MR. ROBB:  Object to the form.

13             THE WITNESS:  It would be both.

14        The drawing package is a deliverable as

15        part of the MDR milestone review.

16   BY MS. JONES:

17        Q.    Right.  And the MDR milestone

18   review, in your opinion, was the critical path

19   as of this schedule?

20        A.    That is correct.

21        Q.    And in your opinion, the drawings

22   package would also be on the critical path

23   because it's a component of the MDR milestone?

24        A.    That is correct.

25        Q.    And then you say:



1          critical path delay because of the

2          project's dated milestone approach."

3               You see that?

4     A.     Yes, I do.

5     Q.     And you would agree with me, would

6     you not, Ms. Lober, that TransCore agreed to

7     abide by the milestone approach when it signed

8     the contract, correct?

9               MR. ROBB:  Object to the form.

10               THE WITNESS:  The gated milestone

11          approach was part of the project, yes.

12     BY MS. JONES:

13     Q.     And is the fact that the milestone

14     approach is gated what makes it a critical

15     path delay?

16     A.     No.

17     Q.     When you say is a critical path

18     delay because of the project's gated milestone

19     approach, what is it that you mean then?

20     A.      It is part -- it would not be the

21     sole pause of the delay.  However, the gated

22     milestone approach prevents additional

23     submittals, subsequent milestone design review

24     phases.

25     Q.      And, again, when you say TransCore



 1    requirement that requires TransCore to provide

 2    RMTA with a complete list of the information

 3    it needs and decisions it requires from RMTA

 4    to keep the project on schedule?

 5         A.    I believe that's --

 6              MR. ROBB:  Object to the form.

 7              THE WITNESS:  I believe that's a

 8         standard requirement.

 9    BY MS. JONES:

10         Q.    Let's look at paragraph 9, if you

11    don't mind, please.

12              Have you finished, Ms. Lober?  It's

13    hard to tell.  I don't mean to rush you.

14         A.    No.  I'm done, yes.

15         Q.    Okay.  Is it your opinion,

16    Ms. Lober, that TransCore did not cause delay

17    to the project because TransCore had a

18    reasonable recovery plan for the delay prior

19    to MDR?

20         A.    Yes.

21         Q.    And is that opinion based upon the

22    recovery schedule from November of 2018,

23    Schedule 10 that we reviewed?

24         A.    Yes.

25         Q.    And if we can just flip the page

