IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TRANSCORE, LP, | ) |
|     Plaintiff/Counterclaim Defendant, | ) |
| v. | ) Case No.: 3:19-cv-820-REP |
| RICHMOND METROPOLITAN TRANSPORTATION AUTHORITY, | ) |
|     Defendant/Counterclaim Plaintiff. | ) |

**TRANSCORE, LP'S REPLY IN SUPPORT OF MOTION IN LIMINE
TO EXCLUDE EXPERT TESTIMONY OF HAROLD WORRALL**

TransCore, LP ("TransCore"), by counsel, submits this reply in support of its motion in limine to exclude Harold Worrall from providing expert testimony for Richmond Metropolitan Transportation Authority ("RMTA") [ECF No. 122].

## ARGUMENT

**I. Worrell should not be allowed to testify on "direct damages" resulting from Project delay.**

RMTA has sued TransCore for breach of contract, which it claims resulted in delay. In its opening brief, TransCore noted that the Agreement's liquidated-damages provisions, § 17.1 and § 17.2, provide the exclusive remedy for RMTA's delay-related injuries. And observed that the parties agreed that the liquidated-damages amount was a reasonable estimate of harm caused by Project delays:

> [B]oth parties agree and acknowledge the impracticability and extreme difficulty of fixing and ascertaining the true value of the damages which RMTA will sustain by failure to reach certain performance criteria such as loss of revenue, RMTA's being found in breach of third-party contracts, service charges, interest charges, harm and inconvenience to the public, delays caused to other activities of RMTA by failure to perform this agreement, and other damages, some of which are indefinite and not susceptible of easy proof, such amounts were actively negotiated between the Parties, and are in each instance agreed by both Parties to be a reasonable estimate of the amount of damages RMTA will sustain.

[ECF No. 123, at 3-4] (emphasis omitted). Thus, TransCore argued, the Court should not allow RMTA's expert, Harold Worrall, to testify about "direct damages" above and beyond the liquidated-damages amount. As a matter of law, this testimony is irrelevant and inadmissible. *Ranger Const. Co. v. Prince William Cty. Sch. Bd.*, 605 F.2d 1298 (4th Cir. 1979) (holding that where parties contractually agree to apply liquidated damages for injuries caused by delay, a party cannot recover more than what the liquidated-damages provision allows).

In its opposition, RMTA largely ignores these points. It ignores the language in § 17.2, which states the parties' intent that liquidated damages represent a reasonable estimate of *all* damages—direct or indirect—caused by delay. Instead, RMTA asserts that limiting delay damages to what is allowed by § 17.1 would render meaningless the section's clause stating that liquidated damages were not RMTA's exclusive remedy. But as TransCore explained in its opening brief, this is not so. That liquidated damages are the exclusive remedy for damages caused *by delay* does not RMTA from seeking other remedies in cases involving damagers unrelated to delay . If anything, it is RMTA that renders contract language meaningless. RMTA's argument simply ignores the statement in § 17.2 that the parties intended liquidated damages to be a reasonable estimate of all forms of damages caused by delay.

RMTA also cites § 20, which limits TransCore's total liability to two times the value of the Agreement, not including amounts assessed for liquidated damages. RMTA asserts that TransCore's liquidated-damages argument renders this provision meaningless. Not so. If RMTA sues TransCore for injuries unrelated to delay, then it can recover damages up to two times the amount of the Agreement. But where, as here, RMTA sues for injuries caused by delay, then § 17.1 and § 17.2 require damages to be determined by the Agreement's liquidated damages provision—a simplified

2

method that both parties agreed would yield "a reasonable estimate of the amount of damages RMTA will sustain."

Instead of abiding by its agreement to use liquidated damages in lieu of jury-determined damages for delay, RMTA wants to have its cake and eat it, too. It wants to recover liquidated damages for delay, and then pile additional delay-related damages on top of that. This is contrary to the terms of the Agreement, contrary to common sense, and contrary to the Fourth Circuit's opinion in *Ranger Const. Co. v. Prince William Cty. Sch. Bd.* RMTA's delay damages are defined solely by § 17.1 and § 17.2 and depend only on the number of days beyond the RSAT deadline that it takes TransCore to complete the RSAT milestone. Worrall's proposed testimony about supposed "direct" damages caused by TransCore's alleged delays is both irrelevant and inadmissible.

**II.     The Court should bar Worrall from testifying about causation of delay.**

In its opening brief, TransCore asked that the Court bar Worrall from testifying about causation of delay. It noted that in complicated construction cases like the present case an expert proposing to testify about construction delays must show how the delay in question affected the project's "critical path." This is because a delay in performing a particular task, or set of tasks, injures the owner only if such delay slows down the overall project. By definition, only delays on the project's critical path slow down the entire project.

In the present case, Worrall did not use the industry-standard critical-path methodology to analyze which parties caused what delay and by how much. Indeed, Worrall did not use *any* type of time-sequence methodology to show how delays in one part of the Project caused delay to the overall Project. Instead, Worrall's "methodology"—if one can call it that—was simply to identify all late-completed tasks and add up the number of days each task was late. Doing so, he concluded that there

were 18,626 days (51 years) of delay on the Project—an obvious absurdity, given that the Project did not even commence until late 2017.

In its response, RMTA argues that the critical path method has "no relevance whatsoever to a milestone based contract." [ECF No. 143, at 7.] But none of RMTA's experts said this.[1] And RMTA cites neither evidence nor case law for the proposition. RMTA grounds its "irrelevance" argument on an unsupported assertion by counsel.

Furthermore, RMTA's arguments presupposes that the milestones were enforced strictly and that TransCore could not perform work on later milestones. But the evidence in this case shows that TransCore could perform work on leader milestones, albeit at its own risk. (Deposition of Theresa Simmons ("Simmons Depo."), attached hereto as **Exhibit 1**, at 296:7-297:2; 299:7-10; Deposition of Barry Mickle ("Mickle Depo."), attached hereto as **Exhibit 2**, at 124:1-12.) For example, TransCore could (and did) perform project-design work for future milestones before RMTA approved the initial design review milestone. (*Id.*; Simmons Depo., at 189:16-20; 296:7-297:2.) To take account of the effect of concurrent work on overall project delay, one needs to employ either a critical-path analysis or something comparable to it. None of RMTA's witnesses have performed any such analysis.

Tellingly absent from Worrall's expert report—and RMTA's opposition brief defending it—is any description or explanation of: (1) what methodology Worrall used to evaluate project delay, (2) how Worrall applied such a methodology to the facts of this case, and (3) what conclusions Worrall drew about who was accountable for what amounts of delay in the Project. Instead, RMTA merely claims—incorrectly[2]—that there was a 302-day period of "uncontested delay at the completion of the Initial Design Review ('IDR') milestone" and that TransCore "failed to recover a single day of that

---

[1] TransCore's expert, Heather Lober, expressly denies it. [ECF No. 107, Ex. 2.]

[2] That IDR was completed 302 days later than scheduled does not mean that the Project had been delayed 302 days. Among other things, TransCore could have worked ahead on other aspects of the Project while awaiting IDR approval.

delay in the Midpoint Design Review ('MDR') milestone." [ECF No. 143, at 7.] RMTA also asserts that it does not bear the burden of showing causation of delay. Instead, it claims, TransCore bears the burden of showing that TransCore did *not* cause delay.

These arguments about burden of proof are both wrong and irrelevant to the issue now before the Court. TransCore's Rule 702 motion challenges Worrall's methodology for determining causation of delay, and it challenges his application of any such methodology to the facts of this case. So the sole questions are whether Worrall has correctly applied an industry-standard methodology for quantifying who caused what delays in the present case. He has not, and so the Court—exercising its gatekeeping function—should not allow him to testify about delay.

Continuing in the same vein, RMTA criticizes the causation analysis of TransCore's expert, Heather Lober. [ECF No. 143, at 7.] Lober, unlike Worrall, *has* done a critical path analysis, using sophisticated software to apply a CPM algorithm to the many hundreds of tasks in this case. [ECF No. 107, at 5-7, and Ex. 2.] RMTA, however, belittles this industry-standard approach as nothing more than punching numbers into a "scheduling software tool." [ECF No. 143, at 9.] Again, none of this has anything to do with the qualifications, methodology, or analysis of RMTA's expert, Harold Worrall. The argument is a transparent attempt by RMTA to deflect from Worrall's failure to use any time-sequence analysis to determine who was responsible for what delays.

The critical path methodology is the standard methodology in the construction industry for calculating causation of delay. It is the methodology accepted—indeed, often *demanded*—by courts across the country. [ECF No. 123, at 6-7.] Because Worrall did not apply this methodology, or any other accepted methodology for determining causation of delay, the Court should bar him from opining on this issue.

**III. The Court should not allow Worrall to testify about early project delays.**

Evidence of a contract breach is relevant only if that breach is causally connected to damages that the plaintiff claims to have suffered. *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion as to damages must be causally related to the alleged harm."). In the present case, Worrall proposes to testify about understaffing and schedule slippages that occurred in early to mid-2018. Such testimony is relevant only if those alleged breaches are causally connected to the delay for which RMTA seeks relief in this case. *PBM Products, LLC v. Mead Johnson Nutrition Co.,* No. 3:09-CV-269, 2010 WL 56072, at *6 (E.D. Va. Jan. 4, 2010), (excluding expert testimony on damages where expert "establish[ed] no causal link between the alleged misconduct and the claimed damages[.]").

For reasons stated above, Worrall cannot establish causation of delay. Nor does RMTA have any other witness who can do so. Accordingly, there is no way for RMTA to connect the alleged contract breaches in early to mid-2018 to the delays for which RMTA has sued TransCore. To put this in evidentiary terms, the lack of a causal connection means that facts about understaffing and delays in early to mid-2018 are of no "consequence in determining the action." Fed. R. Evid. 401(b). That is to say, they are irrelevant. *Id.* Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Accordingly, the Court should bar Worrell from testifying on these matters.

In responding to this argument, RMTA makes no attempt to bridge the causal divide between the events in early 2018 and the delay that RMTA alleges in this case. Nor can it do so. As explained above and in TransCore's opening brief, establishing causation of delay in complicated construction cases requires a critical-path analysis, which RMTA's experts have not performed. Because RMTA cannot establish a causal connection between the events in early 2018 and the delays for which RMTA has sued TransCore, Worrell's proposed testimony about those events is irrelevant and inadmissible.

**IV. RMTA did not timely supplement Worrall's report.**

In its opening brief, TransCore noted that it was served with Worrell's "supplemental expert consultant report" on Sunday, October 25, 2020, at 11:45pm. Worrall's deposition was that Tuesday, October 27, 2020. In its opening brief, TransCore argued that Worrall's 11th-hour supplemental report was untimely and that Worrell should not be allowed to testify as to any new opinions expressed therein. Specifically, TransCore argued that Worrall should not be allowed to offer opinions on the following subjects:

- That TransCore's recovery schedules have "anomalies" and were inconsistent with the terms of the parties' Agreement.

- That the Detailed Design Drawings submitted in November 2018, January 2019, and March 2019 "demonstrate little progress in terms of additional information and nothing about existing tolling elements" and that the March 2019 drawings "contained an inconsistency in design between the civil and electrical drawings."

- That "the definition of schedule delay should be measured as the planned versus actual date for accomplishing a milestone" and should not be based on TransCore's CPM schedules.

[ECF No. 123, at 13-14.] RMTA responds that Worrall's dilatory supplemental report merely expands on matters already disclosed, and that he supplemented his reports merely to respond to comments by some of TransCore's experts.

RMTA is wrong to suggest that Worrall's prior reports touched on these issues. Tellingly, RMTA does not identify anything in Worrall's earlier reports stating that TransCore's recovery schedules were defective or were inconsistent with the terms of the parties' agreement. RMTA does not identify anything in the earlier reports stating that that there was an inconsistency between TransCore's civil and electrical drawings. And it does not identify anything in the earlier reports opining that "the definition of a schedule delay should be measured as the planned versus actual date

7

for accomplishing a milestone" or that the critical path method was not appropriate for evaluating delay in this case.

Even if RMTA could establish that Worrell stated such opinions earlier—and it cannot—this would just show that RMTA would not suffer any prejudice if the Court strikes Worrall's 11th-hour supplemental report. RMTA cannot consistently maintain both that: (1) the opinions in Worrall's October 25, 2020 supplemental report were not new or surprising, and (2) RMTA would be prejudiced if the Court struck the supplemental report. Either the opinions were new, in which case the disclosure came too late; or the opinions were not new, in which case the supplemental report was superfluous and should be stricken.

RMTA also argues that TransCore could cure any surprise by questioning Worrall in his deposition about the newly disclosed opinions. Had RMTA served the supplemental report a reasonable time before Worrall's deposition, this argument might have some force. But RMTA served it on TransCore at 11:45 PM on Sunday night. Other depositions took place in the case on Monday. This did not give TransCore sufficient time to evaluate Worrall's newly disclosed opinions, to consult with its experts about them, or to formulate a strategy for deposing Worrall about his new opinions.

Finally, RMTA's own arguments show that—in submitting this supplemental report under Rule 26(e)—RMTA was trying to do what courts expressly forbid. It was trying to use Rule 26(e) as a "'loophole . . . [to] revise [its] disclosures'" in light of the opposing party's challenges to its expert's conclusions and analysis. *EEOC v. Freeman*, 778 F.3d 463, 467 n.7 (4th Cir. 2015) (quoting *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009)). The Court should not allow RMTA to circumvent Rule 26(a)(2)'s expert-disclosure requirements in this way.

## **CONCLUSION**

For all the foregoing reasons, TransCore respectfully requests that the Court grant TransCore's motion in limine to exclude the expert testimony of Harold Worrall.

TRANSCORE, LP

By:    <u>/s/ Thomas M. Wolf</u>
              Counsel

Thomas M. Wolf (VSB No. 18234)
Joseph M. Rainsbury (VSB No. 45782)
John "Jack" M. Robb, III (VSB No. 73365)
Kenneth T. Stout (VSB No. 88027)
MILES & STOCKBRIDGE P.C.
919 E. Main Street, Suite 1302
Richmond, VA 23219
804.905.6910 (Telephone)
804.905.6910 (Facsimile)
twolf@milesstockbridge.com
jrainsbury@milesstockbridge.com
jrobb@milesstockbridge.com
ktstout@milesstockbridge.com

*Counsel for TransCore, LP*